FORET, Judge.
This suit involves a dispute over the possession and ownership of a tract of land located in Vermilion Parish. Plaintiff, Simon Comeaux, filed a petition cumulating a possessory action and an action for declaratory judgment recognizing his ownership in the disputed tract. Named defendants were Pearl Davenport, Pinkey (Margret) Davenport, Chester Davenport, Theophilus * Davenport, their heirs, successors and assigns[1]. The trial court rendered judgment in favor of defendants, dismissing all of plaintiffs demands. From that judgment, plaintiff has perfected this appeal.
This appeal raises two issues:
(1) Whether plaintiff waived his right to the possessory action by filing a peti-tory action, and
(2) Whether plaintiff ceased to possess as owner by virtue of having signed a predial lease of the subject property.
FACTS
The property which is the object of this suit is known as Lot 7 and is described as:
THAT CERTAIN TRACT OR PARCEL OF LAND comprising eight (8) acres, more or less, located in the N/2 of the NE/4 of Section 19, Township 12 South, Range 4 East, being described as lot 7 as per plat made by Ernest Montagne, Esquire, surveyor on January 11, 1916, and recorded in the conveyance records of the Parish of Vermilion, original act # 30786, C.O.B. 65, folio 423, said plat being made a part hereof by reference for all purposes; said eight (8) acres hav *820 ing been acquired by Act of Partition dated February 19, 1918, before James R. Kitchell, Notary Public, and being part of that certain eighty (80) acre tract formerly belonging to the Estate of Sarah Joiner, wife of and Francis Jones.
As stated in the description, Lot 7 was acquired by the named defendants as a result of a partition of an eighty-acre tract which occurred in February of 1918. In 1958 and again in 1962, defendants, Pinkey (Margret) Davenport and Pearl Davenport, granted mineral leases on Lot 7 and these leases were recorded in the public records. Defendant, Theophilus Davenport, granted a mineral lease on Lot 7 in 1958, and that lease was also recorded.
Plaintiff went into possession of Lot 7 in November of 1952. At that time, he fenced in the tract and began using it for grazing cattle. He also began paying the property taxes. Since 1952, plaintiff has maintained his possession of the property and continued to pay the taxes. At the time of trial (February 24, 1983), plaintiff had possessed Lot 7 for over thirty years.
The only possible defect in plaintiffs possession is a predial lease which plaintiff signed in 1975. The lease document sets out a lease with a one-year term between Theophilus Davenport and Pinkey (Margret) Davenport as lessors, and plaintiff as lessee. The lease limits the use of the property to pasturage and cultivation of hay crops, and provides that the lessors shall have free access to the premises for the purpose of observing lessee’s actions and his crops. The lease also imposes a duty on lessee to maintain the premises. Additionally, the lease reserves the lessor’s right to sell the premises or to conduct mineral exploration on the property.
DID PLAINTIFF FILE A PETITORY ACTION?
Plaintiff commenced this action by filing a petition styled “Possessory Action and Petition in Suit for Declaratory Judgment” in which plaintiff alleged that he had the right to possess the disputed property and was entitled to the ownership of the tract as a result of thirty years acquisitive prescription. Plaintiff further averred that he was “entitled to a judgment declaring him to be the true, sole, and lawful owner of said parcel”. The petition did not include a prayer for a declaratory judgment.
In their brief, defendants contend that in filing the above described petition, plaintiff, in effect, cumulated a possessory action with the petitory action and, thereby, waived the possessory action. See LSA-C. C.P. Art. 3657. Specifically, defendants claim that by pleading thirty years acquisitive prescription, plaintiff converted his possessory action into a petitory action. Contrary to defendants’ contention, it is clear that plaintiff's averments concerning ownership are intended to form the basis, not of a petitory action, but of an action for a declaratory judgment. This is plainly indicated by the designation of the pleading as a “Suit for Declaratory Judgment”.
We feel that a fair reading of plaintiff’s petition leads to the conclusion that plaintiff filed a possessory action and nothing more. Although plaintiff attempted to cumulate an action for a declaratory judgment with his possessory action, he only prayed for the relief he would be entitled to as a successful litigant in a possessory action. Normally, the failure to pray for specific relief does not warrant a denial of that relief if the petitioner is entitled to it under his whole pleadings. LSA-C.C.P. Art. 862; Poynter v. Fidelity & Casualty Company of New York, 140 So.2d 42 (La.App. 3 Cir.1962), cert. denied (La.1962). In this case, however, the specific relief which plaintiff prayed for would be inconsistent with a declaratory judgment recognizing his ownership in the disputed tract. In his petition, plaintiff specifically prayed that the court order defendants to assert their adverse claims of ownership within a certain period of time, not to exceed sixty days. A declaratory judgment recognizing plaintiffs ownership would be inconsistent with such an order. Faced with this sort of inconsistency, we will grant plaintiff what he specifically requests rather than what we might surmise he seeks. Accordingly, *821 we conclude that plaintiff has filed a pos-sessory action, and nothing more.
DID PLAINTIFF BECOME A PRECARIOUS POSSESSOR?
The question of whether plaintiff ceased to possess Lot 7 as owner hinges on the validity of the predial lease. If the lease is not valid, then plaintiff never became a precarious possessor, but continued to possess as owner. One is presumed to intend to possess as owner unless his possession began as a precarious possession. LSA-C.C. Art. 3427.
Plaintiff testified that in 1975, Theophi-lus Davenport, a distant relative of his, visited him and requested that he sign some papers. Plaintiff consulted an attorney concerning this, apparently informally, and without showing the attorney a copy of the lease document which plaintiff did not have in his possession. Plaintiff testified that this attorney told him that whatever the document was, signing it could not “hurt him”. Plaintiff further testified that he went to the office of an attorney engaged by Theophilus Davenport and signed the lease document. Plaintiff, who, although he can sign his name, cannot read or write, testified that the document was neither read nor explained to him and that the only portion of the document he saw was the last page which he signed and which only contained the paragraph and a place for his signature and the signature of a notary and witnesses.
We note that the attorney who prepared the lease may not have been aware that plaintiff could not read and write since plaintiff could sign his name. The attorney testified regarding plaintiffs signing the lease as follows:
“Q. Is it your practice to present a document of this kind, which purports to be a lease, to a person and just ask him to sign the signature page without explaining anything about it?
A. It is not. I would have to say the probabilities are I told the man what it was and explained it, you know.”
We do not think that the attorney’s testimony regarding “the probabilities” of his having explained the lease to plaintiff strongly contradicts plaintiffs testimony regarding his lack of knowledge as to what he signed. For that reason, we have serious misgivings regarding the validity of plaintiffs consent. The events surrounding the signing of the lease suggest that at the very least, there is some doubt as to whether plaintiff validly consented to the lease. However, we find the lease defective for other reasons.
The lease document indicates that the parties to the lease are Theophilus Davenport and Pinkey (Margret) Davenport as lessors, and plaintiff as lessee. Although the lease document was signed by Theophi-lus Davenport and plaintiff, it was never signed by Pinkey (Margret) Davenport. Testimony given at trial indicated that Pin-key Davenport had refused to sign the lease document. We think that the failure of Pinkey Davenport to give her assent to the lease invalidated it.
It is clear from the lease document that Pinkey Davenport was intended to be a party to the lease. Her failure to assent to the lease rendered it invalid. The consent of the parties is necessary to the validity of a contract. LSA-C.C. Articles 1766, 1779.
It might be suggested that the contract was valid as a contract between plaintiff and Theophilus Davenport. We find, however, that the contract was invalid in toto. Pinkey Davenport’s failure to assent to the contract substantially altered the agreement. Error as to the object of a contract will invalidate the contract if it bears on the substance or a substantial quality of the object. LSA-C.C. Art. 1842.
Although one co-owner may lease the property in which he holds an interest, the lessee may not exclude the co-owners who are not parties to the lease, from the property. Pettus v. Atchafalaya Wildlife Protective Society, 351 So.2d 790 (La.App. *822 1 Cir.1977). Therefore, Pinkey Davenport’s failure to assent to the lease meant that plaintiff would have less rights as lessee than he would otherwise have had since Pinkey Davenport would have continued to have every right to use the property and plaintiff would have no right to exclude her.
Further evidence that no agreement was ever reached and that the lease never took effect is provided by the fact that plaintiff never paid the rent provided for in the lease, nor did any of the defendants make any demand for it. We conclude that the lease was never valid, and, therefore, that plaintiff has always possessed Lot 7 as owner.
Since plaintiff had been in possession of Lot 7 in excess of one year before he filed the possessory action, and since a continuing legal disturbance existed in the form of recorded mineral leases executed by defendants, plaintiff was entitled to prevail in his possessory action. LSA-C.C. Art. 3434; LSA-C.C.P. Arts. 3658, 3659.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed and judgment is hereby rendered in favor of plaintiff.
Accordingly, it is now:
ORDERED, ADJUDGED AND DECREED that plaintiff's right to the possession of the immovable property described as:
That certain tract or parcel of land comprising eight (8) acres, more or less, located in the N/2 of the NE/4 of Section 19, Township 12 South, Range 4 East, being described as Lot 7 as per plat made by Ernest Montagne, Esquire, surveyor, on January 11, 1916, and recorded in the conveyance records of the Parish of Vermilion, original act # 30786, C.O.B. 65, folio 423, said plat being made a part hereof by reference for all purposes; said eight (8) acres having been acquired by Act of Partition dated February 19, 1918, before James R. Kitchell, Notary Public, and being part of that certain eighty (80) acre tract formerly belonging to the Estates of Sarah Joiner and Francois Jones.
be recognized and that he be maintained in possession thereof.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants, Pearl Davenport, Pinkey (Margret) Davenport, Chester Davenport, Theophilus Davenport, their heirs, successors and assigns, assert their adverse claim of ownership of the immovable property described above within sixty days after the date on which this judgment becomes executory or be precluded thereafter from asserting the ownership thereof.
All costs of this appeal and at trial level are assessed against defendants-appellees.
REVERSED AND RENDERED.

 Sometimes spelled “Theopilus”.

. The named defendants in this case are all apparently dead and their heirs or assigns were unknown. In accordance with LSA-C.C.P. Art. 5091, et seq., an attorney was appointed to represent them. This attorney was able to locate two of the descendants of the named defendants: Dorothy Davenport Wells, granddaughter of Theophilus Davenport, residing in New Orleans, Louisiana, and Revordia Jones Viney, granddaughter of Margret Davenport, residing in Beaumont, Texas. Following the trial of this matter, the court-appointed attorney withdrew as counsel of record with the trial court’s permission. All further notices of appeal were to be sent to the two above named parties. A brief has been filed on defendants’ behalf by John G. Poteet, Jr., of Lafayette, Louisiana.